UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FREDERIC GREEN, ) <br> ) <br>       Plaintiffs, ) <br> vs. ) <br> ) <br> DR. MICHAEL MINEV, *et al.*, ) <br> ) <br>       Defendants. ) <br> ) | Case No.: 2:19-cv-01889-GMN-VCF <br><br> **ORDER** |

    Pending before the Court is Defendants Gregory Bryan, Bob Faulkner, and Gregory Martin's (collectively, "Defendants'") Motion for Summary Judgment, (ECF No. 45).[1] *Pro se* Plaintiff Frederic Green ("Plaintiff") filed a Response, (ECF No. 55), and Defendants filed a Reply, (ECF No. 57).

    Also pending before the Court is Defendants' Motion for Leave to File Exhibits Under Seal ("Motion to Seal"), (ECF No. 46). Plaintiff did not file a Response.

    For the reasons discussed below, the Court **GRANTS** Defendants' Motion for Summary Judgment and Motion to Seal.[2]

---

[1] Defendants Bryan, Faulkner, and Martin are the only remaining Defendants in this case. (*See* Screening Order on First Am. Compl. ("Screening Order") 7:2–7, ECF No. 24).

[2] Because no party opposes the Motion to Seal and the Exhibit in question clearly contains Plaintiff's medical records, the Court GRANTS the Motion to Seal. The public has a presumptive right to inspect and copy judicial records and documents. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). When a party requests to seal a document in connection with a motion for summary judgment, a court may seal a record only if it finds "compelling reasons" to support such treatment and articulates "the factual basis for its ruling, without relying on hypothesis or conjecture." *Ctr. For Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–97 (9th Cir. 2016); *Kennedy v. Watts*, No. 3:17-cv-0468, 2019 WL 7194563, at *2 (D. Nev. Dec. 23, 2019) (applying compelling reasons standard to sealing request made in connection with motion for summary judgment). Many courts in the Ninth Circuit "have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records." *Steven City Broomfield v. Aranas*, No. 3:17-cv-00683, 2020 WL 2549945, at *2 (D. Nev. May 19, 2020) (collecting cases). Here, the entirety of the Exhibit Defendants seek to

## I. BACKGROUND

This case arises out of Defendants' alleged deliberate indifference to Plaintiff's serious medical needs while he was incarcerated at High Desert State Prison ("HDSP"), managed by the Nevada Department of Corrections ("NDOC").[3] (Screening Order on First Am. Compl. ("Screening Order") 3:13–18, ECF No. 24); (*see generally* Am. Compl., ECF No. 23). The facts relating to Plaintiff's medical condition and treatment are undisputed. (*See* Mot. Summ. J. 2:1–4:21, ECF No. 45); (Resp. Mot. Summ. J. ("Resp.") at 10–17, ECF No. 55). Plaintiff's condition began in 2018 when he was experiencing discomfort and pain in his groin. (Screening Order 3:19–20). Plaintiff met with Defendant Martin on September 28, 2018, who stated that Plaintiff had an inguinal ligament injury (hernia), and that surgery was required. (*Id.* 3:20–4:2). Plaintiff was referred to a general surgeon, Dr. Caravella, who performed surgery on Plaintiff at Desert Spring Hospital (the "contracted hospital") on March 5, 2019. (*Id.* 4:2–4).

Following the surgery, and back at HDSP, Plaintiff experienced pain and discomfort to his scrotum and right testicle. (*Id.* 4:4–5). Plaintiff had a large mass surrounding his right testicle. (*Id.* 4:5–6). From March of 2019 to March of 2020, Plaintiff submitted a series of medical kites and medical request forms to HDSP medical staff regarding this condition. (*See generally* P.'s Relevant Med. Records, Ex. A to Mot. Summ. J., ECF No. 47-1). During this time, HDSP medical staff refilled Plaintiff's prescriptions, examined Plaintiff during medical appointments at the HDSP medical clinic, arranged Plaintiff's follow up appointment with the contracted hospital, and scheduled an exploratory surgery for Plaintiff, which was performed on August 21, 2019. (Mot. Summ. J. 2:10–3:4); (*see generally* P.'s Relevant Med. Records, Ex. A to Mot. Summ. J.). Plaintiff had an ultrasound of his scrotum on November 8, 2019,

---

seal contains Plaintiff's sensitive health information, medical history, and treatment records. (*See generally* P.'s Relevant Medical Records, Ex. A to Mot. Summ. J., ECF No. 47). Accordingly, the Court GRANTS Defendants' Motion to Seal.

[3] Plaintiff was released from HDSP in March, 2020. (Am. Compl. ¶ 8).

after which Plaintiff was referred to urology. (Mot. Summ. J. 3:18–20).  HDSP medical staff attempted to schedule an appointment for Plaintiff with a urologist, but the urology clinic NDOC was using could not take new clients. (*Id.*).  Plaintiff eventually had an appointment at Las Vegas Urology on February 17, 2020. (P.'s Relevant Med. Records at 90, Ex. A to Mot. Summ. J.).  In the interim, HDSP medical staff continued to refill Plaintiff's prescriptions and see Plaintiff at the HDSP medical clinic. (*See generally id.*, Ex. A to Mot. Summ. J.); (Mot. Summ. J. 3:19–4:18).

Simultaneously, Plaintiff began the grievance process for Grievance No. 2006-30-82884 relating to his medical care. (*See* Administrative Grievance, Ex. B to Resp., ECF No. 55-1). Plaintiff initially filed his Informal Grievance on April 22, 2019, alleging that his March 5, 2019, surgery led to another injury causing discomfort, pain, and disfigurement. (*Id.*, Ex. B to Resp. at 4).  On May 8, 2019, NDOC rejected the informal grievance because Plaintiff asserted a non-grievable issue; "Per AR 740, grievances concerning medical diagnosis, medication or treatment/care provided by a private/contracted community hospital are not grievable." (*Id.*, Ex. B to Resp. at 7).  Plaintiff resubmitted Grievance No. 2006-30-82884 on May 23, 2019, and NDOC again rejected the informal grievance for the same reason. (*Id.*, Ex. B to Resp. at 8–9). Plaintiff resubmitted the informal grievance again on July 28, 2019, alleging that HDSP employees, rather than the contracted hospital that performed the surgery, "did not explain the risk involved" for surgery. (*Id.*, Ex. B to Resp. at 10).  Although this version of Grievance No. 2006-30-82884 stated a grievable claim, NDOC rejected the Informal Grievance on October 23, 2019, because "the surgeon needs to discuss the risk and benefits of the surgery that is recommended." (Grievance 2006-30-82884, Ex. D to Mot. Summ. J. at 6, ECF No. 45-3).  NDOC also noted that, according to Plaintiff's medical records, Plaintiff had a follow-up appointment with the contracted hospital. (*Id.*, Ex. D to Mot. Summ. J. at 6).

Plaintiff appealed Grievance No. 2006-30-82884 to the next level by filing a First-Level Grievance on September 30, 2019. (Administrative Grievance at 13, Ex. B to Resp.). NDOC rejected the First-Level Grievance on October 1, 2019, because it contained more than two continuation forms, in violation of AR 740.04. (*Id.*, Ex. B to Resp.). Plaintiff refiled his First-Level Grievance, but NDOC again rejected it. (*Id.* at 17, Ex. B to Resp.). Plaintiff did not submit a Second-Level Grievance. (Resp. at 32).

Plaintiff filed his Amended Complaint on September 1, 2020, against several employees and officials at HDSP, alleging that Defendants were "deliberate[ly] indifferen[t] to [a] serious medical need, that resulted in further significant injury and unnecessary wanton infliction of pain," in violation of the Eighth Amendment. (Am. Compl. at 7). On November 4, 2021, Defendants filed the instant Motion for Summary Judgment. (*See generally* Mot. Summ. J.).

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to

isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404,

1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.    DISCUSSION

Defendants seek summary judgment on all claims. Defendants assert numerous reasons why the Court should grant summary judgment, including because Plaintiff failed to exhaust his administrative remedies. The Court agrees that the undisputed facts demonstrate Plaintiff's failure to exhaust his administrative remedies. Accordingly, the Court does not address Defendants' other arguments. *See Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (courts should decide exhaustion before examining the merits of a prisoner's claim).

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). The PLRA requires "proper exhaustion"

of administrative remedies. *Id.* at 93.  Proper exhaustion "means that a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009).  "Applicable procedural rules [for proper exhaustion] are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

      The defendant bears the initial burden to show that there was an available administrative remedy, and that the prisoner did not exhaust it. *Albino*, 747 F.3d at 1169, 1172.  Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172.  The ultimate burden, however, rests with the defendant. *Id.*  Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166; *see* Fed. R. Civ. P. 56(a).  If a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case then proceeds to the merits. *Albino*, 747 F.3d at 1171.

      Defendants' Motion for Summary Judgment includes a copy of the NDOC Administrative Regulation ("AR") 740, entitled "Inmate Grievance Procedure," which governs the NDOC grievance policy. (AR 740, Ex. C to Mot. Summ. J., ECF No. 45-2).  Before beginning the grievance process, an inmate must first attempt to resolve the matter by other means, "such as discussion with staff or submitting an inmate request form." (AR 740.08(1), Ex. C to Mot. Summ. J.).  If the inmate cannot otherwise resolve the issue, then the inmate may file an informal grievance. (AR 740.08(1), Ex. C to Mot. Summ. J.).  "Only inmate claims arising out of, or relating to, issues within the authority and control of the Department may be submitted for review and resolution." (AR 740.03(3), Ex. C to Mot. Summ. J.).  "Non-grievable

issues include . . . "[m]edical diagnosis, medication or treatment/care provided by a private/contract community hospital." (AR 740.03(3)(D), Ex. C to Mot. Summ. J.). An inmate may not appeal a non-grievable claim to the next procedural level. (740.03(5), Ex. C to Mot. Summ. J.).

For claims regarding medical issues, the procedure continues as follows: (1) an informal grievance, which is "responded to by a charge nurse or designee of the Director of Nursing," (AR 740.08(2)(B), Ex. C to Mot. Summ. J.); (2) a First-Level Grievance appealing the Informal Grievance decision to the "highest level of Nursing Administration," (AR 740.08(12)(A), 740.09(1)(B), Ex. C to Mot. Summ. J.); and (3) a Second-Level Grievance, which is decided by the Medical Director, (AR 740.10(1)(E), Ex. C to Mot. Summ. J.). For both the Informal Grievance and the First-Level Grievance, the prison's response should be provided within forty-five days, and then "[t]he inmate must file an appeal within five (5) calendar days of receipt of the response to proceed to the next grievance level." (AR 740.08(12), 740.09(5), Ex. C to Mot. Summ. J.). Inmates may proceed to the next grievance level if they do not receive a response within the time frame indicated in the regulation. (AR 740.03(8)(B), Ex. C to Mot. Summ. J.). These three levels constitute the process required for an inmate to exhaust all available NDOC administrative procedures. (AR 740.03(6), Ex. C to Mot. Summ. J.).

Here, Defendants argue that Plaintiff failed to exhaust his administrative remedies. The undisputed facts demonstrate that Plaintiff did not file a Second-Level Grievance for Grievance No. 2006-30-82884. (*See generally* Admin. Grievance, Ex. B to Resp.); (*see also* Grievance 2006-30-82884, Ex. D to Mot. Summ. J.) As laid out above, Plaintiff filed several non-grievable Informal Grievances before filing one that was denied on the merits. (*See generally id.*, Ex. D to Mot. Summ. J.). Plaintiff moved Grievance No. 2006-30-82884 to the next level

by filing a First-Level Grievance.[4] (Administrative Grievance at 13, Ex. B to Resp.). Plaintiff filed several subsequent First-Level Grievances, but never filed a Second-Level Grievance. (*See generally id.*, Ex. B to Resp.). In his Response, Plaintiff asserts that he filed an Informal Grievance and "proceeded to the First [L]evel [G]rievance 45 days later," but does not respond to the absence of a Second-Level Grievance.[5] (Resp. at 32). Plaintiff alleges, without support, that he was "denied and delayed to complete the full grievance process." (*Id.*).

Even liberally construing Plaintiff's filings and viewing all the facts in the light most favorable to Plaintiff, Plaintiff cannot overcome his failure to file a Second-Level Grievance. The Court notes that the exhibits containing the record regarding Grievance No. 2006-30-82884 do not line up perfectly.[6] Nonetheless, Defendants meet their initial burden of showing that filing a Second-Level Grievance was available to Plaintiff, and Plaintiff did not do so. Plaintiff does not offer any evidence to rebut Defendant's showing that he did not file a Second-Level Grievance or offer any evidence demonstrating that he was denied an opportunity to file a Second-Level Grievance. Accordingly, the Court finds Plaintiff did not exhaust his

---

[4] Although Plaintiff filed his First-Level Grievance before his Informal Grievance was formally denied on October 23, 2019, Plaintiff properly appealed his Informal Grievance. An "inmate may proceed to the next grievance level[] if a response is overdue." (AR 740.03(8)(A), Ex. C to Mot. Summ. J.). A response is due forty-five days after an Informal Grievance is received by the grievance coordinator. (AR 740.08(12), Ex. C to Mot. Summ. J.). Plaintiff filed his grievable Informal Grievance on July 28, 2019, and the grievance coordinator received the grievance on August 1, 2019. (Grievance No. 2006-30-82884 at 6, Ex. D to Mot. Summ. J.). Plaintiff filed his First-Level grievance on September 30, 2019, sixty days after his Informal Grievance was received and fifteen days after a response was due. (Administrative Grievance at 13, Ex. B to Resp.).

[5] Defendants argue that the Court should strike Plaintiff's Response pursuant to Local Rule 7-3 because it exceeds the page limits. (Reply at 3:14–18, ECF No. 57). In light of Plaintiff's status as a *pro se* litigant, the Court has liberally construed his filings, holding him to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Under this less stringent standard, the Court declines to strike Plaintiff's hand-written Response even though it exceeds the page limits specified in the Local Rules.

[6] Plaintiff's Exhibits to his Response include two First-Level Grievances dated November 18, 2019, and January 25, 2020, respectively, that are not signed or filled out by NDOC. (Administrative Grievance at 18, 20, Ex. B to Resp.). These documents are not in Defendants' Exhibits. The last "reject" from NDOC, marked as the "3rd and Final Reject," is dated January 15, 2020, before the latest date attached to a First-Level Grievance. (*Id.* at 17, Ex. B to Resp.).

administrative remedies, and Defendants are entitled to summary judgment on all claims. *See Albino*, 747 F.3d at 1166, 1168.[7]

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 45), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Exhibits Under Seal, (ECF No. 46), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's First Amended Complaint, (ECF No. 23), is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is instructed to enter Judgment accordingly and close the case.

**DATED** this __24__ day of October, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court

---

[7] The Court notes that the January 15, 2020, form rejecting Plaintiff's First-Level Grievance states that a prisoner "may re-submit [his or her] grievance at the same level" after correcting the deficiencies listed. (Administrative Grievance at 17, Ex. B to Resp.) (emphasis added).  This could suggest that Plaintiff did not have an opportunity to submit a grievance at the next level.  But the First-Level Grievance form itself notes that if an inmate disagrees with NDOC's response, "a second level grievance may be pursued." (*Id.* at 13, Ex. B to Resp.). Plaintiff has not provided any reason why he could not re-file a proper First-Level Grievance or file a Second-Level Grievance. (*See generally* Resp.).